## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ASHLEY WILMOTH**,

      Plaintiff,

v.

**HFE 5 LLC; LEFTY'S**
**VENTURES, LLC;**
**LEFTY'S HOLDINGS, LLC;**
**and HUSSEIN 'SAM' BERRY,**

      Defendants.

Civil Action No. _____
Hon. _____

---

ROBERT M. GIROUX (P47966)
ANDREW J. LAURILA (P78880)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com
alaurila@greatMIattorneys.com

      /

---

## COMPLAINT & JURY DEMAND

    NOW COMES Plaintiff, ASHLEY WILMOTH, by and through her attorneys, GIROUX PAPPAS TRIAL ATTORNEYS, P.C., and for her Complaint against the above-named Defendants, states as follows:

1

## **PARTIES**

1.      At all relevant times, Plaintiff Ashley Wilmoth was a resident of the City of Roseville, County of Macomb, State of Michigan and at all relevant times, worked at Lefty's Cheesesteak at 1335 West 8 Mile in Detroit, Michigan.

2.      Defendant HFE 5 LLC, is a domestic limited liability company located in the City of Southfield, County of Oakland, State of Michigan and also operates a Lefty's Cheesesteak franchise at 1335 West 8 Mile Road, Detroit, MI, which was where Plaintiff worked.

3.      Defendant Lefty's Ventures, LLC is a domestic limited liability company located in Southfield, Michigan, has the same management/ownership as HFE 5 LLC, operates various Lefty's Cheesesteak franchise across Michigan and the United States and is believed to be a co-employer and/or joint employer of Plaintiff.

4.      Defendant Lefty's Holdings, LLC is a domestic limited liability company located in Southfield, Michigan, has the same management/ownership as HFE 5 LLC, operates various Lefty's Cheesesteak franchise across Michigan and the United States and is believed to be a co-employer and/or joint employer of Plaintiff.

5.      Defendant Hussein "Sam" Berry is the owner of these entities, is a citizen of the United States and resides in Michigan, and as the owner of the

specific Lefty's where Plaintiff worked, had overall responsibility for the terms of Plaintiff's employment, hiring/firing decisions, wage payment decisions, including the decision to pay (or not pay) employees overtime wages.

6.     Defendants, collectively, were an "enterprise engaged in commerce or in the production of goods for commerce" as they had employees engaged in commerce or in the production of goods for commerce, they have businesses all over the country and import food products from across the Country, and had a gross annual sales well exceeding $1,000,000, meaning they are "enterprise[s] whose annual gross volume of sales made or business done is not less than $500,000", making Defendants a covered enterprise under 29 U.S.C. 29 U.S.C. § 203(s)(1)(A).

7.     Defendant Berry is an "employer" pursuant to the Fair Labor Standards Act, 29 U.S.C. § 203(d) given his specific role in dictating Plaintiff's terms of employment, including the payment of wages and overtime wages, and also he is an "employer" under the Michigan Whistleblowers' Protection Act, M.C.L 15.361(b) given he is an agent and owner of these involved entities.

8.     At all times material and relevant hereto, Defendants, collectively and under theories of a theory of joint employers, were Plaintiff's employer, who was a covered employee pursuant to 29 U.S.C. § 203(e).

## JURISDICTION AND VENUE

9.      This cause of action arises out of violations of the overtime pay provisions and anti-retaliation provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a) & 216(b), the Michigan Workforce Opportunity Wage Act, MCL 408.414a, the Michigan Whistleblower Protection Act, MCL 15.361, and alternatively, a violation of Michigan's Public Policy Wrongful Discharge.

10.     This Court has jurisdiction over the claims arising under federal law pursuant to 28 U.S.C. §§ 1331 and pendent jurisdiction over Plaintiff's state law claims given they are similar in nature to the federal claims.

11.     The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

12.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as this cause of action arises out of occurrences that took place within this District, in the County of Wayne and Defendants have its place of business and transacts in Wayne and Oakland County, along with all over the state.

## COMMON FACTUAL ALLEGATIONS

13.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 12, as if fully set forth herein.

14.    Plaintiff was employed by Defendants—while her checks were signed and paid for by HFE 5, LLC and Defendant Berry, it remains unclear the extent which all Defendants were involved in the operations and employment decisions regarding Plaintiff's employment, however it is believed that Lefty's Ventures and Lefty's Holdings played a significant role in the financial and management aspect of the restaurants under the banner of HFE 5, LLC, to the extent they were a joint enterprise.

15.    Plaintiff was hired by Defendants as a manager at the above-referenced Lefty's Cheesesteak on or around September of 2022.

16.    While she was deemed a manager, she was paid an hourly wage of $16/hour when hired and she worked anywhere between 50-70 hours/week in this position, and her paycheck amounts would vary week-to-week.

17.    From the date she was hired, she was not paid overtime compensation.

18.    Defendants—specifically Defendant Berry, who dictated her pay and pay checks and personally decided the manner in which she would be paid—would pay her weekly.

19.    Strangely, Plaintiff would receive a payroll check for 40 hours at her hourly rate, and then would receive a company personal check for the hours she worked over 40 hours; policies dictated by Defendant Berry.

20.     While the personal check was for hours she worked over 40 hours/week, it was for her standard hourly rate and did not include any overtime rate.

21.     Berry told Plaintiff he paid her in this format because if he put all her hours on a single payroll check he would have to pay her overtime; simply put, he knew she was entitled to overtime under the law, and wanted to circumvent that.

22.     On or around late February/early March of 2023, because Plaintiff felt that Defendants were violating overtime wage laws in failing to pay 1.5 times her hourly rate for her overtime hours, she confronted Defendant Berry about this and told him she should be receiving overtime compensation and his failure to do was a violation of wage laws.

23.     In response to this opposition, Defendant Berry denied this, but subsequently gave Plaintiff a raise to $18/hour instead of her previous $16.

24.     Despite this raise, Plaintiff still continued to work 50-70 hours/week—the Lefty's was doing well, in part due to her hard work—and did not receive any overtime compensation, but was paid in the same manner as before.

25.     As her lack of overtime continued despite working well in excess of 40 hours every week, Plaintiff again confronted Defendant Berry regarding this issue, requesting she receive overtime pay.

26.     When this failed yet again, Plaintiff filed a complaint with the Wage & Hour Division on March 23, 2023, asserting that she was unlawfully not receiving overtime compensation.

27.     Abruptly, on March 25, 2023, Defendant Berry demoted Plaintiff.

28.     Then on March 27, 2023, Defendant Berry terminated Plaintiff.

29.     Plaintiff was not given any specific reason for her termination or demotion.

## COUNT I – FLSA UNPAID OVERTIME – 29 U.S.C. § 206 - AS TO ALL DEFENDANTS

30.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 29, as if fully set forth herein.

31.     Defendants were an "enterprise engaged in commerce or in the production of goods for commerce" as it had "employees engaged in commerce or in the production of goods for commerce" and "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ." 29 U.S.C. § 203(s)(1)(A). As such, Defendants were a covered enterprise under the terms of the FLSA.

32.     Plaintiff was an individual employed by Defendants, and she was a covered "employee" pursuant to 29 U.S.C. § 203(e).

33.     Under the FLSA, 29 U.S.C. § 207(a)(2), unless an employee is exempt, "[n]o employer shall employ any of his employees who in any workweek

is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

34.     Every week Plaintiff worked for Defendants, she worked in excess of 40 hours/week—sometimes close to 55-60 hours/week—but she was not compensated for any overtime hours, instead being paid her hourly wage for all hours in excess of 40 hours.

35.     Though Plaintiff had managerial duties, she was not an exempt employee as defined under the FLSA, 29 U.S.C. § 213, given she was solely paid an hourly wage and was not paid a salary and did not work a set amount of hours per week. See 29 C.F.R. § 541.600(a) ("To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis…").

36.     By failing to pay Plaintiff at a rate not less than 1.5 times her regular hourly rate for hours that she worked in excess of 40 hours/week as required under the FLSA, Defendants have violated 29 U.S.C. § 206 and 207, and Plaintiff is entitled to damages and compensation set forth in 29 U.S.C. § 216(b).

37.     Defendants' violations of the FLSA were not in good faith within the meaning of 29 U.S.C. § 260—particularly given Defendant Berry's admission that

8

Plaintiff received a distinct, non-payroll check at her standard hourly rate for hours exceeding 40 hours/week so he did not have to pay her overtime wages—which entitles Plaintiff to liquidated damages pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant as follows:

(1) Compensatory damages for her unpaid overtime hours at a rate of one and one-half times her regular pay;

(2) Liquidated damages equal to the amount of compensatory damages awarded;

(3) An award of interest, costs, and reasonable attorney fees and expert witness fees;

(4) Any other relief, equitable or legal, that appears just and appropriate at the time a judgment is rendered.

## COUNT II – FLSA RETALIATION – 29 U.S.C. § 215 - AS TO ALL DEFENDANTS

38.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 37, as if fully set forth herein.

39.     Under the FLSA, 29 U.S.C. § 215(a)(3), it is unlawful " to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding

under or related to this chapter, or has testified or is about to testify in any such proceeding."

40.    FLSA protected activity under 215(a)(3) includes internal and/or informal complaints regarding pay, wages, and overtime compensation and only need be made on a good-faith basis.

41.    On multiple instances, Plaintiff engaged in FLSA protected activity when she confronted and requested overtime pay from Defendant Berry for the hours she worked in excess of 40 hours/week and also when she filed a complaint with the Wage & Hour division.

42.    Instead of addressing Plaintiff's request for overtime compensation, Defendants first demoted Plaintiff and then terminated her; both of these adverse actions lacked justification and were abrupt.

43.    In close proximity to her ongoing complaints, Plaintiff was discharged from her employment when Defendants retaliated against her for engaging in the above-reference protected activity in violation of 29 U.S.C. § 215(a)(3).

44.    Defendants' violations of the FLSA were not in good faith within the meaning of 29 U.S.C. § 260, which entitles Plaintiff to liquidated damages pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants as follows:

(1) Compensatory damages for past and future wages (future wages to the extent reinstatement is not possible) including overtime benefits she would have been entitled to;

(2) Compensatory damages for emotional and mental distress;

(3) Liquidated damages equal to the amount of compensatory damages awarded;

(4) Punitive damages;

(5) An award of interest, costs, and reasonable attorney fees and expert witness fees;

(6) Any other "legal or equitable relief as may be appropriate to effectuate the purposes of § 215(a)(3) or § 218(d) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." § 216(b).

### <u>COUNT III – VIOLATION OF THE MICHIGAN WORKFORCE OPPORTUNITY WAGE ACT ("WOWA")— AS TO ALL DEFENDANTS</u>

45.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 44, as if fully set forth herein.

46.     Defendants were a " a person, firm, or corporation, including the state and its political subdivisions, agencies, and instrumentalities, and a person acting

in the interest of the employer, who employs 2 or more employees at any 1 time within a calendar year" M.C.L. §408.412(d). As such, defendants were a covered enterprise under the terms of the Michigan Workforce Opportunity Wage Act.

47.    Plaintiff was "an individual not less than 16 years of age employed by an employer on the premises of the employer or at a fixed site designated by the employer..." , and was an "employee" pursuant to M.C.L. §408.412(c).

48.    As Plaintiff was a non-exempt employee given she only received an hourly wage and worked anywhere between 50-70 hours/week during her employment with Defendants, under the Michigan Workforce Opportunity Wage Act, Defendants were required to pay Plaintiff "at a rate not less than 1-½ times" her hourly rate for the hours she worked in excess of 40 hours/week. See M.C.L. §408.414a.

49.    Defendants did not pay Plaintiff 1-½ times her regular hourly rate, in violation of the WOWA.

50.    Defendants also violated M.C.L. §408.479 by failing to keep, make and preserve accurate records of all the work by Plaintiff.

51.    Defendants' violation of the Michigan WOWA was willful and entitles Plaintiff to liquidated damages equal to twice the overtime wages that were due, pursuant to M.C.L. § 408.419.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants as follows:

(1) Compensatory damages for unpaid overtime commissions;

(2) Liquidated damages;

(3) An award of interest, costs, and reasonable attorney fees and expert witness fees;

(4) Any other "legal or equitable relief as may be appropriate" under Michigan law.

### COUNT IV – RETALIATION IN VIOLATION OF THE WHISTLE BLOWERS PROTECTION ACT-, M.C.L. § 15.361 *et seq.,* AS TO ALL DEFENDANTS

52.    Plaintiff hereby restate and re-allege the allegations contained in paragraphs 1 through 51 above, as though fully set forth herein.

53.    Michigan's Whistleblowers Protection Act, M.C.L. § 15.362, states that an "employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state…"

54.     At times material and relevant, Plaintiff was an employee of Defendants covered by and within the meaning of the WPA, M.C.L. § 15.361(a).

55.     As an employer within the meaning of the WPA, M.C.L. § 15.361(b), Defendants owed Plaintiff a duty not to discharge/retaliate against her with respect to her employment, promotional opportunities, compensation, or other conditions or privileges of employment on the basis of reporting or being about to report violations of Michigan or other laws/standards applicable to DMC's operation of a medical facility.

56.     Plaintiff engaged in WPA protected activity when she filed a complaint with the Wage & Hour Division on March 23, 2023 regarding her good-faith belief that Defendants were unlawfully failing to pay her for overtime wages.

57.     Defendants, by and through their agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not limited to, demoting Plaintiff on March 25, 2023 and terminating her on March 27, 2023.

58.     Upon information and belief, Plaintiff was subjected to this adverse action due to Plaintiff's protected activity which was in violation of the WPA, M.C.L. § 15.362.

59.     Defendants and their agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

60.     As a direct and proximate result of Defendants' unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, loss of the ordinary pleasures of life and any other damages permissible under the Whistleblowers' Protection Act.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendant in an amount greatly exceeding $75,000, together with interest, costs, and attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

### COUNT V– MICHIGAN PUBLIC POLICY WRONGFUL DISCHARGE CLAIM AS TO ALL DEFENDANTS

61.     Plaintiff hereby reasserts and re-alleges each and every allegation contained in paragraphs 1 through 60, as if fully set forth herein.

62.     Pursuant to Michigan law pertaining to public policy exceptions to an employee's at-will employment status, an employer cannot discharge and/or take adverse employment action(s) against an employee for the following reasons:

a. Where explicit legislative statements prohibit the discharge, discipline, or other adverse treatment of employees; and/or

b. Where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

63.     At all times material and relevant, Plaintiff was an employee and Defendants were Plaintiff's employer, and Plaintiff was an at-will employee.

64.     Plaintiff engaged in public policy protected activity when she made internal complaint(s) to Defendants regarding the failure to pay her valid overtime wages and opposed this nonpayment.

65.     The WOWA, specifically M.C.L. § 408.421, prohibits retaliation, but does not provide a remedy and/or right of action for retaliation following internal overtime complaints.

66.     Plaintiff brings this claim in the alternative to Count IV given her WPA protected activity occurred two and four days, respectively, before Defendants adverse actions took place and it is unknown the extent that Defendants had knowledge of this WPA protected activity when they took the adverse actions.

67.     If Defendants were not aware of Plaintiff's Wage & Hour complaint (WPA protected activity) and Plaintiff cannot meet the prima facie notice element of her WPA claim, Plaintiff is entitled to assert this public policy claim in the alternative. *See Pace v Edel-Harrelson*, 309 Mich App 256, 272; 870 NW2d 745 (2015) (rev'd on other grounds) ("[P]laintiff concedes that her public policy claim

need only be allowed to proceed if she fails to establish a *prima facie* case under the WPA. This position is consistent with the applicable law").

68.     Plaintiff's internal complaints encompassed Defendants failure to pay her overtime wages in violation of the law.

69.     The same decision-maker that was involved in this decision to unlawfully refuse to pay Plaintiff for overtime wages (Defendant Berry), that Plaintiff reported this legal violation to and opposed his conduct to, was the sole decision maker involved in demoting and terminating Plaintiff.

70.     Plaintiff was abruptly demoted on March 25, 2023 and then terminated on March 27, 2023, without Defendants providing her any legitimate basis for the same.

71.     Defendants terminated Plaintiffs' employment because of her good-faith internal complaints about Defendants' ongoing violations of overtime wage laws as it pertained to Defendants failure and refusal to pay Plaintiff overtime wages for hours she worked in excess of 40 hours/week.

72.     Defendants' actions in demoting and then terminating her employment was directly related to her internal complaints and reporting of these wage-related violations.

73.     As a direct and proximate result of Defendants' unlawful actions against Plaintiff as described herein and pursuant to Michigan's public policy

exception to at-will employment, has suffered injuries and damages, including, but not limited to, potential loss of earnings, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

74.     Pursuant to the public policy wrongful discharge rule, Defendants are liable to Plaintiff for all damages allowed under state law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendant in an amount greatly exceeding $75,000, together with interest, costs, and attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

Respectfully submitted,

By: /s/ *Andrew J. Laurila*
ROBERT M. GIROUX (P47966)
ANDREW J. LAURILA (P78880)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com
Dated: June 15, 2023                    alaurila@greatMIattorneys.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ASHLEY WILMOTH**,

      Plaintiff,                Civil Action No. _____

                                   Hon. _____

v.

**HFE 5 LLC; LEFTY'S**
**VENTURES, LLC;**
**LEFTY'S HOLDINGS, LLC;**
**and HUSSEIN "SAM' BERRY,**

      Defendants.

_____

ROBERT M. GIROUX (P47966)
ANDREW J. LAURILA (P78880)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com
alaurila@greatMIattorneys.com

_____/

## **JURY DEMAND**

     **NOW COMES** Plaintiff, Ashley Wilmoth, by and through her attorneys,

GIROUX PAPPAS TRIAL ATTORNEYS, P.C., and hereby demands a trial by jury

in the above stated cause of action.

Respectfully submitted,

By: /s/ *Andrew J. Laurila*
ROBERT M. GIROUX (P47966)
ANDREW J. LAURILA (P78880)
Giroux Pappas Trial Attorneys, P.C.
Attorneys for Plaintiff
28588 Northwestern Hwy., Ste. 100
Southfield, MI 48034
(248) 531-8665; Fax: (248) 308-5540
rgiroux@greatMIattorneys.com
Dated: June 15, 2023                    alaurila@greatMIattorneys.com